This case is here on procedural issues. This is the fifth appeal of Mr. Withers and his attempt to have the district court render a findings of fact and conclusions of law on the 2255 petition that he filed in 2003. The government concedes that the notice of appeal from the limited remand or, excuse me, from the third appeal was timely filed, and the government has not opposed Mr. Withers' request to remand this case to a different judge. You know, we are familiar with the history of it. The big problem is you're claiming structural error, but that was in the trial. The way it comes up now is on failure of counsel. And now can we still say the structural error provides prejudice on the defective assistance of counsel issue? Yes, it does, because — Well, why can't — I know you believe that, but give me a couple reasons why. Well, if the trial lawyer in the court during voir dire, where the judge says, you know, everybody that's in the courtroom and, you know, all of you out, I need the entire courtroom, and the lawyer fails to object, there could be several reasons why the lawyer failed to object. Okay. He may be deficient. Right. And because it's per se reversible error, it's structural error — And then it goes up on appeal, and the appellate counsel fails to make it. At that point, they have waived structural error twice. Now, they got all the benefit by letting it go over, and then they bring a habeas position. Oh, we've got structural error. But that isn't the standard for judging deficiency of counsel, is it? But their appellate attorney could have been deficient for failing to raise a per se reversible issue. I agree with you that they both fail in some respect. The question is, do they have to show prejudice when it comes over on the habeas? That's a difficult question. It is a difficult question. And that's your argument there. That's what I'd like to focus on. But that is why there is such a proceeding as a 2255 proceeding. What's that? That is why we have 2255 proceedings. No, but do you have a case? You know, it's a — I think it is a case of first — I mean, I think you've got a point here that the Supreme Court of the United States will have to resolve. But if you have a case that they have resolved, then I'd be, of course, enlightened. I do not have a case that's specifically on point. You've got a good point, but whether it's the winning point, I don't know. You know, but it seems to me that if a appellate lawyer fails to file a — raise an issue that is per se reversible — He's bad. He's bad. Have you got prejudice? Well, we don't know. Well, I think that he is prejudiced because he has been denied his right to a public trial. I mean, so the structural error transcends itself into a prejudice. You may be right, but you may be wrong. I'm sorry? You may be right, you may be wrong. And that's why this case needs to go back for thorough consideration. Thorough consideration before the district court. I mean, there are numerous other issues, and none of Mr. Withers' claims are procedurally frivolous. They're complicated. And given that four times now he's tried to get the district court to render findings of fact and conclusions of law, which would help this court. Well, he's made a mess of it. Let's agree with that. I'm sorry? He's made a mess of it. We'd have to send it to somebody else. Right. So that's absolutely right. And another district court judge may, with adversarial briefing on both sides, we will have the answer to the court's question that is desperately needed to be answered after all these years. And there are numerous other issues that are not frivolous, that he deserves to have this case sent back to another judge for what, 2255 mandates. So let me ask you this. The procedural posture of this. Yes. So Judge Reel has never ruled on the merits. No. That's where we're at. We're basically back to ground zero, correct? That's correct. And he dismissed it summarily. Three or four times already. But I mean the most recent time. And you can do that as a district court judge in a habeas petition if you find that it's basically frivolous. You don't have to conduct a hearing. You don't have to issue findings. You don't have to do anything. You can just say, denied. I looked at the record here. Denied. There's nothing here. Well, first of all, the court did not make any findings in fact that it was frivolous. And in terms of summarily dismissing a petition, the cases say that, you know, if in fact he had just filed let's say a very brief foreign petition with conclusory allegations, oh, my lawyer was lousy, the appeal was unfair, this was that. But that's not what Mr. Withers did. He filed a detailed, he filed a foreign petition and a detailed memorandum of points and authorities with law, with he raised numerous issues. He argued the ineffective assistance of counsel for any cause and prejudice. And one cannot look at this and say this is, you know, some worth of summary denial without an answer by the government. You just want us to send the whole thing back. Send the whole thing back to the district court, to another district court to do what Star 255 requires. I mean, Mr. Withers is in this position through no fault of his own. And this, in all the years that this has been going back and forth, the government has conceded that he deserves, you know, the decision on the merits. And now here we are, six years later, the government is now saying throw it out. And that's not fair. I mean, that is not what 2255 requires. And Mr. Withers deserves a district court judge, take a look at it. There may be necessity for an evidentiary hearing, expansion of the record. Some of the issues that the government is arguing, for example, the, you know, that some of the claims are the same. I mean, I didn't do the direct appeal. I don't have copies of the appellate briefs. I haven't read the transcripts. That's not what, you know, this case came to be on. And I cannot say that they were raised and rejected on appeal. So that's one of the problems as well. I mean, the district court is the place to expand the record. Let me ask you a few questions. How many, what happened here, I gather, there were people in the courtroom, the attorneys were there. I don't know who these other folks were. Perhaps they were witnesses or relatives or whoever. But Judge Real just said that the near jury, jurors selected to, were sent down, the prospective jurors, he'd need the room and everybody out. And he said. Everybody out. That's right. And there was no objection made to that. There was apparently not. But, you know, I don't have the entire right here. So how many jurors were sent down, prospective jurors, by the jury commissioner? Your Honor, I don't know the answer to that question. I think that that is something that needs to be, I mean, in the Judd versus Haley case from the 11th Circuit. The answer is in the court's records. If I could get, you know, maybe we need the transcript of the entire voir dire to determine that. But I think what's important. You don't need a transcript. It's just how many people were sent down. I don't know how many seats that courtroom holds, but let's say 60 people can come down at one time. How many were sent down? 60, 70, 50? Well. Why did he all of a sudden just say, the rest of you, out. Out. He said, we're having the prospective jurors that are coming out here. I need the room out. That's what he said. Well, he also said, and I think that this is important. So you never checked that out. Well, I think it's important because. I have not checked that out, Your Honor. I think you should. No, I have not. But I would like to venture an educated guess. I mean, I've been in Judge Real's courtroom. He has a big courtroom. And when he said here, he added, not only all of you out, he said, we need the entire courtroom. Yeah. So one can assume that there were 60 or 70 jurors sitting in there waiting to be voir dire. I bought a book that a former district attorney of New York wrote. I can't think. He ran for president. Paid $20, not $20, $15. And the one thing he kept emphasizing was, never assume anything. So you need the facts. So you don't know. And how about you have another issue here, and that has to do with wiretaps. That's correct. And you don't know whether the wiretap, the phone numbers were of someone's telephone or pager. I don't know the answer to that, Your Honor. You don't know the answer to that. So if it was a phone number, then we'd have some serious problems because the wrong form was used and the party who wasn't empowered authorized the wiretaps. And then you have the judicial bias issue. That's correct. There are several issues here that are not frivolous and worthy to be summarily discussed. And you're talking about structural error and that if you show structural error, you don't have to show prejudice. That's correct. Okay. And I'm just wondering. Why don't we hear from the government? I'm sorry? Why don't we hear from the government? Thank you. Okay. I should say the State. The government. Oh, the government. That's all right. May it please the Court, Jennifer Cho on behalf of the United States of America. The certificate of appealability was granted in this case on a very narrow question, which is whether or not the district court was entitled to summarily deny the 2255 petition without ordering response from the government and without ordering an evidentiary hearing. And 2255 says on its face that if the petition conclusively shows, conclusively demonstrates that the petition on its face does not state a claim upon which the defendant is entitled to relief, then the district court can summarily deny the petition without ordering response from the government and without an evidentiary hearing. This Court ruled in Schafflander that in that case it was, the facts were very similar. A 2255 petition was filed. It was not a form petition. There were several claims that were raised. Judicial misconduct, prosecutorial misconduct, ineffective assistance of counsel. And the district court in that case summarily denied the petition with a very short order that said I've considered the petition, I've considered the merits. When viewed against the record, I find that the petition was. Who was the judge in that case? It was Judge Hatter, Your Honor, in the central district. Who? Judge Hatter in the central district. And that order went up on appeal, and this Court in Schafflander said that the district court is entitled to do so. Clearly under 2255, that consideration of the merits of the petition when viewed against the record, if it doesn't state a claim for which relief is entitled, then summary denial is appropriate. And that is the situation in this case here. Now. What did the order here say? The order said. The court has considered the merits? Correct. The court has considered the merits, and the petition is denied. It's a very short order, about one paragraph. And the petition was very detailed. This Court reviews the petition de novo, and the government's position is that on the face of the petition, even when construed narrowly because the petitioner was pro se when he filed it, the petition simply does not state a claim for which relief can be granted. Now, there are 18 points. About half of them are the ineffective assistance of counsel claims for the other claims. But in every single one of these claims that the petitioner raises, he simply does not state a claim upon which he's entitled to relief, and he doesn't make any sort of evidentiary showing. How about the public trial issue, the wiretap issue? The wiretap issue is clear, that the numbers for which the government sought the wiretap application for, in that application there were several numbers. And all but two of the numbers did receive the authorization from a specifically designated individual at the Department of Justice. Those numbers were telephone numbers. Individual at where? At the Department of Justice, as is required by statute. Okay. The two numbers that are at issue are pager numbers. Pager numbers, when you put a wiretap on a pager, you are intercepting electronic communications. And these electronic intercepts do not require, under statute, clearly stated in the statute, you don't need to get that special authorization. How do we know they're pager numbers? There's no dispute, because in the petition, Defendant Mr. Withers himself identified them as pager numbers. And, in fact, the government, at the time the government submitted its brief, we hadn't had a chance to dig up the applications, and we wanted to go back and make sure that those applications, those numbers matched the ones that Petitioner had identified in his petition. And once we took a look at the wiretap applications, realized that those two numbers were identified as pagers, and that all they needed for authorization was the authorization of the AUSA who had submitted the application, we went back to the petition and saw that Mr. Withers, in his petition, himself identified them as pagers. In fact, one of them was his own pager. And he, in no point in his petition, or even here in his briefings, does he claim that they are anything but pagers. And he can say now, well, how do we know that they're pagers? But he has made no evidentiary showing whatsoever that they are anything but pager numbers. And because there is not really a factual dispute, and there was no factual dispute at trial when they were identified as pagers or on direct appeal or in any of the briefings up until the very last reply brief in which suddenly the question is, well, how do we know that they're pagers? Well, isn't that one of the ineffective assistance of counsel issues? Well, he hasn't made any sort of showing that these are not pager numbers. In his petition, he did not claim that they were anything but pager numbers. I mean, in the petition himself, he identifies those two numbers that were not given these special authorization as pager numbers, and that's in ER 88, he refers to them as pager numbers and says, well, these wiretap applications were deficient because they did not get the special authorization. But that question is easily resolved by the statute, which is very clear in saying you only need that special authorization for intercepts of wire or oral communications, and it does not apply to pager numbers, the same numbers that Mr. Withers identified as pagers. Would you move on to the public trial? You got it. The public trial right that is set forth in the Sixth Amendment does not require a court to hold trial in a space large enough to accommodate every single person who wants to attend. The Ninth Circuit has held in Ivester and in- Give me the facts. How many people came down? How many seats were there in the courtroom? Your Honor- How many- Well, I apologize. I don't have those exact numbers. On the face of- Look, you know, when you have situations where you know you're going to get too many people in a courtroom, you know, you have a TV hookup. You can use another courtroom. There are other ways of having the public witness what's going on in a trial. You just don't say, out, out. Your Honor, all of those alternative means are, of course- Do you approve of that? Options. I don't, Your Honor, but on the face of the petition, even assuming that every single seat in that courtroom was occupied by a prospective juror and that that required every single spectator that was not a prospective juror to have to clear the courtroom, even assuming that that is true, this Court held in Shryock that that does not rise to the level of an unconstitutional closure. In Shryock, in fact, almost the exact same thing happened. But we have there cases where people are excluded from voir dire, and that's held to violate the rule that you have a public trial. There are a number of cases in which the media was specifically banned from voir dire proceedings for the safety and protection of the panel. I know that, but this is not such a case. Correct. And I'm not talking about that kind of a case. You know, the media may be banned from the courtroom for certain reasons, but they get their feeds, they see what's going on and all that. In this case, assuming that it is assuming the facts are that every single seat in that courtroom was occupied by a prospective juror and that that meant that for that specific proceeding of voir dire that there was not room in the courtroom for any other spectators, even assuming that that's true. But you don't know that is a fact, do you? I don't. You don't know how many people came down. I do not. You don't know how many seats were available. You don't know if chairs could be put. He's got the biggest courtroom in the courthouse. He's got plenty of room. And he's occupied that space for a long, long, long time. However, this occupation by Judge Reel and by the prospective jurors and by any spectators that are unable to get seating, the law is in the circuit that if you have insufficient seating because you have too many prospective jurors or in the case of Shryock, you had a lot of defendants and all of their counsel and interpreters, and there's not enough space in the courtroom, that is not a constitutional violation, and it does not affect or impinge upon the defendant's constitutional right to have a public trial. Now, Justice Harlan stated in his concurrence in Estes v. Texas in 1965 that the right to a public trial is a constitutional safeguard toward the objective of making sure that there's a fair trial. And if there's a courtroom situation where there just isn't enough space to accommodate a very large panel, as was the case in Shryock. But we don't know that, do we? All we know is he said, we're getting a lot of people down here, but I need this space out. And then the second time, out. I got his quote somewhere. He said, we're going to take a recess to bring down the jury panel. All of you people out there are going to have to be out of the courtroom. We have to bring a very big panel of prospective jurors, and we need the entire courtroom, so all of you out, is what the transcript says that Judge Reel said.  Now we'll take a recess. He told them to get out twice. That was it. He said, all of you are going to have to be out of the courtroom. We have to bring in a big panel of prospective jurors. We need the entire courtroom, so all of you out. We're in recess. That's not the way he talks, though. Well. You're very sweet the way you say it. Thank you. You wouldn't want me to do my Judge Reel impression in here, I don't think. At any rate, it was a very temporary closure, and at no point did the court say, go out and never come back. The petition claims that the spectators that were there for the defendant were under the. . . Did he say, as soon as some seats become available, the bailiff will be at the door and he'll let you in? The record does not reflect that as far as I know, but he also. . . Did he say that once we're through with this, you can come back again? Well, he didn't say that, but he didn't have to, Your Honor. He said. . . It would have been nice. Yes. Article III does not require that judges speak in dulcet tones, unfortunately. But he did not say, don't come back. He said, we need the space for the prospective jurors. In other words, we need the space for the very specific purpose of conducting voir dire. And once voir dire was over, there's nothing in the record, and the defendant has made no showing that the district court did anything to keep jurors from coming in. And if they had the misimpression that they couldn't come back after voir dire was over, that does not constitute a constitutional violation. For there to be a closure, and I'm not even sure that what Judge Reel did in this case was a closure, there has to be an affirmative act to close the courtroom. And here, he did clear the courtroom to make room for the prospective jurors, but Shryock is right on point. In that case, there was not enough seating in that courtroom at two points, when the jury returned its verdict and initially when the veneer was given its questionnaires. And that's what happened here. They brought down a very large panel, and Judge Reel said, we're going to need all the space, you need to step out, there's not going to be enough space. Although he did not say, and if there's any seating left over, you can come back. He did not say that. But he also didn't say, you can't come in. And he certainly never said, go away and don't come back. And so this very small temporary closure for the logistical reason that there was not enough seating for the prospective jurors, that is not a constitutional violation. And because that does not rise to the level of a Sixth Amendment violation on the merits, the district court was proper and summarily denying on that claim. And this court can affirm that denial based on the merits in that there has not been a claim for relief stated. And because of that, it is not ineffective assistance of counsel that neither the trial attorney made an objection, nor on appeal, nor at any other stage in the proceedings. And I'll note that this was a nine-defendant indictment. It has to take more courage than 99% of the lawyers have these days. To raise an objection? Yeah. You can't do that, Judge. And I think probably the prosecutor should have said, well, Your Honor, you know, we're required to hold an open trial in this country. Now, can't we have a feed somewhere? Can't we set it up so that at least people can hear what's going on? I agree, Your Honor, that there are. I've had trials where I've had huge overflows, and it's a headache, but you do it. And the court has the equipment to do it. Your Honor, all of those options are available, and I'm not going to disagree that those are fine options. I think the U.S. attorney should have called that to the judge's attention. Well, the record doesn't reflect that anybody objected to this. But the fact of the matter is that the law is clear that. . . Isn't that one of the U.S. attorney's jobs to politely call to the attention of the court if they believe that there's been some problem or something's been overlooked? Your Honor, I don't have the facts as to exactly what happened beyond what was in the transcript that was provided. It doesn't appear that anybody objected when Judge Reel said, we're bringing down the panel and we need a lot of room. I see that my time is running short, so let me just say again that what happened during that voir dire did not rise to the level of a constitutional violation, and therefore that ground has no merit. And I'll also say that there's no need to remand back to the district court because this Court, reviewing the merits of the petition de novo, can see that summary denial is appropriate because no claim has been raised upon which defendant is entitled to relief. So unless the Court has any other questions, I'll submit. Well, you're a very good prosecutor. Thank you, Your Honor.  Thank you, Your Honor. Just very briefly, the Shyrock case is very different from what happened in this case of Shyrock. They were complaining that there was not room for all of the defendants' family members and friends, and this Court held that as long as there was a constant flow of friends and family members who wanted to come into the courtroom, that that was fine. Completely different situation. It was open. Pardon me? It was open. Yes, absolutely. And the other thing is, is that when I'm listening to the government argue, this is not an adversarial proceeding. I mean, the government is arguing that this Court should deny Mr. Withers' petition on the merits based upon record and documents and so on and so forth that I have never seen and would never have had an opportunity to see because I was appointed to do this procedural appeal, and now we're arguing everything that should have been argued in the district court, and I obviously can't do that. This case needs to be remanded to another judge to do what 2255 says the Court should do. Thank you. All right. Thank you. The matter is submitted.
judges: Pregerson, Noonan, Paez